I'll rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is back in session. Proceeding to adjournment. The Honorable Robert D. McClendon presided. Please be seated. Mr. McClendon, this is the final case of the afternoon. The call is to stop The Mega-Dump v. County Board of DeKalb Co. at all. On behalf of the Appalachian, Mr. George Mueller. On behalf of Risk Management of Illinois, Mr. Donald J. Moran. On behalf of the Illinois Pollution Control Board, Mr. Clifford Berlow. And on behalf of the DeKalb County Board, Mr. John Carroll. Thank you. There was an order under previously granting the appellees 10 minutes each. Is that correct? And Mr. Mueller, you'll have some extra time, I believe, during rebuttal. I was advised 10 minutes, Your Honor. Yes. Thank you. You may proceed, Mr. Young. Thank you. If it please the Court, Counsel. Signing hearings are adjudicatory proceedings. As such, they are supposed to be fair. Fair both from the perspective of the decision being based on the evidence and also fair from the perspective of participants having the right to meaningfully participate. The law regarding the rights of participants in adjudicatory proceedings is well established. And the law regarding the obligation of the decision makers to be fair and to base their decision on the evidence is also well established. And they're established both legislatively, in this case through Section 39.2 of the Environmental Protection Act, and judicially through the precedents, many of which have come out of this district. Cases such as E&E Hauling, for example. This Court and Kane County Defenders found that in landfill siting hearings specifically, the public hearing is the most critical stage of the proceeding because it is the only place where there is full and meaningful public participation. Counsel, in this case, I think while you argued in your brief that the articles limited public participation and actually, I think you argued, discouraged it and therefore rendered these proceedings unfair. And point of fact, didn't the hearing officer really allow all persons who wish to participate and cross-examine the witnesses have the right to do so in these proceedings? Justice Enoff, that's absolutely correct. And the issue for this Court to decide, as far as I'm concerned, is whether a set of rules or ordinances that are fundamentally unfair on their face can render the proceedings defective if they are not applied. But they didn't prejudice you or your client. Well, I don't know that it, I wasn't there and my clients didn't have an attorney present and we don't know who failed to prepare or who failed to appear because of the chilling or putting-off effect of those rules. Isn't it your burden to show that, though? Wasn't it your burden to show that before the Pollution Control Board? I think in terms of fundamental unfairness, the guidance we get is from some cases such as a 1984 waste management case in this district where this Court held that public participation is required in those hearings. And anything that has the effect of minimizing or discouraging that participation has to, as a matter of policy, be found to be defective. Otherwise, the rules and ordinances that are going to discourage people will continue to be out there and everyone will say, well, we can cure it all by letting the hearing officer waive the rules. I've been a hearing officer in pollution control facilities citing proceedings and I know the tendency is for the hearing officer to waive rules, but that doesn't mitigate against what occurred prior to that waiver having been made. Previous PCB cases, such as City of Columbia, for example, Kasner Township, and American Bottoms Conservancy, all cited in the briefs talk about the fact that anything which has the tendency to discourage participation needs to be looked at carefully and can render proceedings per se fundamentally unfair. So we're not talking about actual prejudice to those that were there. We're talking about prejudice to the public at large. Well, isn't the Pollution Control Board to review the fundamental fairness of the procedures used in the hearing? Not the procedures that are out in space that may be used, but the procedures that were actually used at this hearing. The procedures that were actually used at this hearing you take no issue with, I take it. I don't take issue with what the hearing officer did with some minor exceptions. That's correct, Justice. But I think the semantics and the statute of procedures used in the hearing also implies the rules that preexisted the hearing. Otherwise, we wouldn't have case law that talks about the obligation of municipalities and counties when they adopt their own ordinances to adopt ordinances that are not inconsistent with the requirements of a public hearing set forth in Section 39.2. Clearly, the county's ordinances here were inconsistent. I don't think that anyone can challenge that, even though the appellees have in their brief made a token stab at saying, well, this kind of limitation of participation may, in fact, be legitimate and warranted. I think that flies in the face of cases like Claren versus Village of Lyle and doesn't need to be seriously considered. So the first impression question for this court on that issue is, is the waiver by the hearing officer sufficient to cure the harm? And the only guidance that we get are from analogous situations of public participation being discouraged. There is no on-point answer to that question. So you're saying that the act, the Illinois Pollution Control Act, mandates unlimited public participation. By participation, I don't mean making public comment, because clearly the act allows for public comment. I'm talking about public participation in the form of questioning witnesses, presenting evidence. Does the act provide for it? Justice Burke, I disagree with one word in your question, and that is the word unlimited. The act does not require unlimited public participation. And, in fact, the PCB in a case like Slate's has said you can limit the scope of questioning, you can limit the duration of questioning. So, obviously, reasonable restrictions connected to the subject matter and the inquiry are always appropriate. But the act does allow participation by an unlimited category and class of people. So someone from Wisconsin could come down and complain about a landfill in DeKalb County that has no ties to the state of Illinois? And, in fact, when Sierra Club shows up, that is exactly what has occurred. So, yeah, I don't think the act limits that whatsoever. And, in this case, this was not an out-of-state or remote group. It was a local citizen group, many of which were residents of the nearby community that had been experiencing hydrogen sulfide problems. So there was a clear and obvious connection. Is there any issue of standing here? I think standing is conferred by Section 40.1, which mandates the PCB to do or to conduct a fundamental fairness review. And that means that each party who participated can argue fundamental fairness, whether or not they were personally or directly impacted by it. Mr. Mueller, do you have a question? Yes. Thank you. You say on page 19, although it is a fundamental fairness issue, consideration of whether the county ordinance prohibiting participation by the general public in the siting hearing is fundamentally unfair is a pure question of law, and that no factual elements are involved. And the court has asked merely to assess the meaning and impact of an ordinance. As such, this issue should be reviewed on a de novo basis. Now, Justice Burke asked you about what happened, not what the ordinance said. And he pointed out, and you, I think, conceded, except for a few minor points that I think you said, that what was actually done or what was, quote, unquote, used, wasn't the ordinance, but the rules and procedures that the hearing officer made. So if that is the case, then what I read to you appears to be inaccurate, because it really isn't the contents of the ordinance that we're supposed to be examining de novo. It's what actually transpired, and what would the standard of review be for that? Oh, I think that those are two issues. And what transpired would be reviewed on the mixed question of fact and law basis, which is the differential standard. Manifesto erroneous. That's correct. And the other point I was going to raise was normally the concept of fairness I don't think is a question of law when it's applied to facts. Would you agree with that? Yes. Okay. That's a mixed question of fact and law, and I, for example, in my argument on the private tours, concede that the standard of review is the more deferential standard. And if that's the case, what's your response to my question to you, which is how was the finding by the PCB that this was fair, how is that manifestly erroneous? Because the PCB didn't look, well, they looked in part at what transpired, and they said no harm, no foul. Since you didn't bring forth a person that failed to attend due to the rules prohibiting attendance, we're not going to give any weight to that argument. And then they said alternatively in their brief analysis, we don't find anything wrong with the rule as it is. Now, I think that statement is subject to de novo review. Whether the mere existence of such a rule can render proceedings unfair as a matter of law is up to this Court to decide de novo. Whether the application of that statute or, in this case, the non-application rendered what occurred during the hearing unfair is a mixed question of fact and law. You, I think, indicated that there was no attorney present. That's correct. And I don't recall, maybe you can tell me, did the rules prohibit an attorney being present on behalf of anyone and in particular stop the dump? No. So at least as far as that issue is concerned, whether or not there was a lawyer present who, had he been or she been present, could have participated and could have cross-examined and could have done whatever that attorney wanted to do, it wouldn't have been a rule violation such that we would not have to determine that as a matter of law the rule was deficient because it didn't prohibit an attorney from being present and representing or being there on behalf of your client. I agree with you. The only thing I'm saying is that an ordinance or rule defining the ordinance which prohibits, which improperly prohibits certain classes of people from participating should be viewed to be fundamentally unfair on its face because of its potential to discourage public participation and because of the policy expressed by the legislature and this court particularly in previous cases saying that public participation is the most important aspect of this local siting hearing. When you use the term public participation, does that include the ability to cross-examine the witnesses? At a minimum because that has been found in all the cases defining adjudicatory due process as one of its elements. Is that in statute or case law? That's in case law. That would be in E&E Hall, it would be in Land and Lakes, it would be in Claren versus Village of Lyle most recently. Okay. The other argument that is significant here is that the private tours sponsored by Waste Management for County Board Members after the or before the siting application was filed clearly had the effect that the private tours previously condemned by the Pollution Control Board in cases such as City of Havana and Beardstown and by the 4th District in the Southwest Energy case had the effect of conveying private information about the subject matter of the adjudication to the decision makers in a way that the opposition would never know what information was conveyed and what impressions were left. You would agree that those are not ex parte communications by definition but are relevant to a prejudgment, prejudice, predisposition argument? You know, I thought about that, Justice Burke, because all of a sudden the term ex parte in the briefs seems to become a semantic issue. Whether it's pre-filing or it's ex parte, it's still a communication with the decision maker on the subject of a contemplated adjudication. And for example, if I were to go to a judge that I know would be assigned a case that I'm about to file and talk to him about the subject matter of that case, the fact that I've had that conversation with him prior to its filing doesn't render the conduct on my part or the conduct on the judge's part in receiving or being influenced by it any less improper. The difference is you're not a legislator. You're not acting in a legislative capacity before that's filed. And that's what the case is talking about, the line of demarcation to filing, because that turns the legislators into adjudicators. But they knew that they were going to be adjudicators. But I mean, you know, the case is talking about if people have a problem with these legislators and the activities that they conduct while they're legislating, they vote them out. I mean, that's the remedy is to vote them out. And, you know, Justice Berg, I agree with you there. And there has been some leeway cut. You may continue, sir. There has been some leeway given to the decision makers by this court and others, understanding that we can't hold them to the standards of judges. But that leeway has not been given to the parties and the applicants. And it was waste management that invited this error by sponsoring the private tours in the first place. Semantics aside, it's clear that the case is talking about that this type of conduct is relevant to the issue of prejudice and predisposition. And I think you were going down that avenue before I maybe rudely interrupted you, and I apologize for that. But my question is, if you have a hearing and the hearing contains all the elements in whatever this section is, 39.2 or whatever this section is, if you have a hearing and there's evidence presented on all those elements, and you're not contesting those elements, those citing criteria, correct? Well, actually, we're saying there's no confidence that the right decision was made. The site was fraught with problems. It's just that it becomes difficult to contest the pollution control boards finding that the decision was not manifestly unreasonable. Well, because there's evidence presented on all those criteria. Right, yes. Okay, again, let's assume for a minute that there's evidence presented on all those criteria. The fact that there's some type of contact beforehand, how does that weigh on the adjudicative facts that were before the board under the citing criteria? And if I can just add to that question, especially in light of the testimony on the part of the members of the county board, that they did not, or they made their decision on factors other than what they gained in the tour, or basically on the evidence as opposed to what they learned pre-filing of the citing application. I believe the county board members spoke out both sides of their mouths. During their discovery depositions, many of them, as reflected in the briefs, talked about how much they learned during the tours, how impressed they were, and how it helped them understand the evidence. Therefore, clearly, impressions were left during those tours that the opposition could never know about. Then the county board members answered in a self-serving fashion, but of course we based our decision on the evidence. And what I submit is that that self-serving testimony flies in the face of the disinterested observer test in E&E Hauling, which requires us to look at not what county board members may say, but whether or not a disinterested observer would conclude that the decision might have been tainted by prejudgment. Thank you. Thank you. You'll have an opportunity to make the vote. Mr. Moran, is that correct? No, this is Mr. Berla for the Pollution Control Board. If you prefer Mr. Moran, you go first. I'm happy to. That's how I think they were announced. Okay. That's okay. Shelby first. I'm sorry. Tell me your name again, please. My name is Cliff Berla, Your Honor. I'm the Assistant Attorney General, and I'm here on behalf of the Illinois Pollution Control Board. I'd like to begin with the colloquy between my colleague and Justice Zinoff regarding the fact that there was no prejudice here, because I think that that cuts to the fundamental shortcoming in all of Petitioner's arguments here. On every question presented, there's simply no evidence from which we can conclude that the way in which the county conducted these proceedings prejudiced any of the objectors. The Petitioner's fundamental fairness arguments here rely upon a rule that was not enforced, the purported right to be present during communications between policymakers and a potential future applicant, even where the Petitioner has not yet formally participated in the case, and the mere fact that policymakers observed that this question regarding a potential waste facility expansion would have economic impacts upon the local community. How would the appellants prove before the Pollution Control Board that people stayed away from this hearing because of their knowledge of the rules? Well, I think that there are two ways to demonstrate that, Your Honor. First, I think what you could do would be to present an individual who says, I would have wanted to participate, but for the fact that I would not have been allowed to cross-examine any witnesses. Now, what's clear here is that the ordinance did allow for anyone to present evidence. It allowed for public comment, and it allowed for written comment. Really, the only thing that was denied to some people, and the some people are people whose interests were no greater than any other member of the public at large. So you could find an identifiable person who said that this specific issue was what deferred me. I think that the shortcoming there, though, is that the Petitioner can't reasonably claim that that dissuaded the Petitioner from participating. The Petitioner never objected at the hearing on the grounds that we have had inadequate time to prepare for cross-examination. The Petitioner never said we'd have counsel here if it were not for this rule because we would have liked to have had the opportunity to cross-examine witnesses. The only basis that the Petitioner has offered here for why this proceeding was fundamentally unfair regarding the local ordinance. You're, in essence, saying they never claimed that they were taken by surprise?  Their whole argument was that we simply don't know who was dissuaded from participating here, and theoretically it could have happened. This is an attempt to establish a fairness, an injury in fact, based on what happened to someone else. And that's the basis for our standing argument, which Justice Enoff, you asked about. The view of the Pollution Control Board is that each individual has a right to a fundamentally fair hearing. What they don't have is a right to say the fact that the hearing is fundamentally unfair to someone else allows me to challenge the fairness of the hearing. The Petitioner here had its day in court. The Petitioner here had the opportunity to make every argument that its heart desired. The Petitioner here had the right to present evidence. What the Petitioner is not entitled to is the right to have those arguments accepted. And the fundamental difference between the right to be heard and the right to have your arguments accepted is the reason that the Petitioner's argument failed before the Pollution Control Board. And it's the same reason that that argument should fail before this Court. What's your take on the fundamental fairness of the ordinance and articles? Do you read the cases the same way as opposing counsel that the County Board must allow full participation by anyone who shows up? No, Your Honor, and I think that this Court's decision, as well as the Illinois Supreme Court's decision in Clarence, makes that very clear. In the Clarence decision, which is the analogous circumstance of zoning, the Court said the one limit is that a community cannot cut off all cross-examination for all people other than the applicant. It then said it is reasonable, though, for a community to adopt a prophylactic rule that is designed to screen out irrelevant cross-examination. And the specific example that the Court used was a rule that said only those who have an immediate property interest, because they're immediately located to the rezoned land or, in this case, the proposed facility, are allowed to cross-examine witnesses. But every other member of the general public is not. So if the Sierra Club – if this ordinance was applied in this case and the Sierra Club showed up, they would have been denied access to cross-examination and presenting evidence on their own behalf? Yes, Justice Burke, that's absolutely correct, and we don't believe that that would create a fundamental fairness problem for the Sierra Club or any other person off the street who wanted to participate here. I think for the reason – the example you used, which is the individual comes from Wisconsin or perhaps from someone from any other part that is distant – from a distant land somewhere else in the state, it seems that there must be – like, a community must be able to manage its proceedings and provide some structure to it. Now, my colleague is absolutely correct. These rules are typically waived because there is not an overflowing number of individuals who want to cross-examine witnesses, and therefore a hearing officer will make the decision to waive the rule. But the question here is whether the minimal standards of due process that are guaranteed by the fundamental fairness provision of the Environmental Protection Act guarantee the right for any individual to engage in limitless cross-examination. The court asked my colleague, what is the – essentially, what is the limiting principle here on cross-examination for the general public? And it seems to me that the petitioner hasn't really offered any limitation. The petitioner simply said – I think what the petitioner was getting at was that at some point, the hearing officer could theoretically cut off cross-examination. But that's not a meaningful limit. And at some level, it seems to me that you have to allow a community to engage – to have a sort of prophylactic rule that this court said was entirely appropriate and clear in order to facilitate a process and a procedure. Does the board have any policy relative to information that is presented prior to an application being filed such that it, by measuring its benchmark with the facts regarding this guided tour, would indicate that they were appropriate or inappropriate tours? Justice McClaren, I'm not aware of any sort of formal sliding scale in which you weigh the relative weight of the evidence from – that's presented during the evidentiary phase and the evidence that's presented during the prefiling phase. I do know that the board has a, I think in many respects, more strict policy, which is to say that the specific rationale for a finding under the section 39.2 factors cannot be information that is determined before the evidence. Certainly background information or general awareness, similar to what a jury brings into a jury box, is appropriate. But not to say the reason I think that this satisfies the necessity element is because of this information I learned before the hearing. That information has to be presented during the evidentiary phase so that any objectors have the opportunity to counter that evidence. Ergo, a tour of a dump for purposes of illustration as to what a garbage truck looks like, what a scale looks like, and what a cell looks like, and possibly if they might see either a clay or some sort of sealer. In general terminology, in essence, a glossary of facts and figures. Vis-a-vis a tour of the proposed site and what would be done were an application to be filed and the application would be granted, this is what would happen. Yes, and that's certainly reasonable, Your Honor. Pre-filing contacts are not obviously limited to tours. There's a host agreement negotiation where these sorts of general outlines and broad contours of the proposed facility are certainly discussed and at the heart of, I would think, any sort of financial negotiation between a community and a waste management company. I think what's critical here is that my colleague here has suggested that there should be no difference between a pre-filing and a post-filing contact. I think that's wrong for two reasons. The first reason is a practical reason, which is that prior to the filing of the application, as Justice Burke observed, there is no proceeding. And because there is no proceeding, there are no parties. And if there are no parties, there is no one who is entitled to notice as a matter of law. So from a purely practical standpoint, to accept the petitioner's argument is to accept the proposition that either there can be no contact between an applicant and the ultimate decision-maker before filing, which I think we know can't be the case because host agreement negotiations are perfectly reasonable and pre-filing review has been held to be perfectly proper, or that the waste management company has an obligation to invite everyone in the world who might have any passing interest in going on a tour on the off chance they may want to participate. May I just briefly finish my thought, Your Honor? Yes. And the second reason here is a legal one, which relates to the presumption that we apply to the democratically elected officials. Democratically elected officials are presumed, as a matter of law, to make proper decisions, make reasonable decisions, and to base their decisions on the evidence that is presented to them. And absent specific evidence to overcome that presumption, then the petitioner's argument regarding prejudgment and bias simply cannot be successful. We presume our elected officials conduct themselves properly for good reason.  Thank you, sir. Thank you, Your Honor. Good afternoon. My name is John Farrell. I'm an Assistant State's Attorney in DeKalb County, and I'm here representing the DeKalb County Board in this hearing. Counsel? Thank you. You may proceed, Mr. Farrell. I would like to pick up where my colleague just left off, and that is that there is indeed a presumption that elected officials, county board members, are capable of making an impartial and informed judgment. And that is something that is, I think, very important here. We don't look at revisiting the credibility of the witnesses, either, when the pollution control… Counsel, I think that the issue on appeal is whether or not the decision by the PCB determining that the proceedings were fair is or is not against the manifest way to the evidence. And I would submit to you that you only have 10 minutes, and discussing the integrity of county board members is somewhat tangential to whether or not the PCB's decision was manifestly erroneous. Well, I think it's clear that it was not manifestly erroneous. To start off with the fundamental fairness argument, as has already been pointed out, the ordinance itself far exceeded, or at least exceeded even, the requirements of the statute for who may participate in a proceeding. And indeed, as has been pointed out also, the hearing officer, and it was made well known to the public before the hearings, the hearing officer expanded those rules even further to allow anyone who wished to appear to participate openly, freely, have the right to cross-examine witnesses. And in fulfilling the back end of that, then, there was the ability for any citizen whatsoever who did not attend the proceeding to file and make a public comment. Within 30 days? Yes. And indeed, there were 99 such public comments that were received by the hearing officer. I was pointing more to the concept that Mr. Mueller raised, that perhaps these pre-hearing and pre-filing visits to the tour were somehow impermissible. And again, I do not believe that there is any question that these are not ex parte communications. We have to look at what occurred, and every single one of the individuals who attended that tour talked under oath about the fact that it was general information provided to the participants who went on the tour. This was indeed pre-filing. It had not been filed yet. And these individuals all testified that it did not cause them to be influenced. Well, counsel, if I could interrupt for a moment though. Don't we know that there were other pretty important issues going on for these county board members at the time? In fact, discussion of jail expansion and the need for funding. And don't we know that this expansion of this landfill would bring in significant dollars that would have enabled the county to actually build and fund that jail? So while they might not have articulated that, I think counsel inferred that maybe they might have been a little disingenuous in saying that that was the only thing that influenced them. I do believe, Your Honor, that under the Illinois Supreme Court rulings in this particular area that it is not impermissible for a county board to consider economic conditions when they are making legislative decisions. And that was in the context of the host agreement before the filing. And I don't believe that there's any evidence whatsoever. In fact, the people who testified, county board members who testified, said this was only one of the many different sources of funding that were being considered for purposes of the jailhouse expansion. The issuance of bonds could have taken place, raising additional tax revenue. And in fact, to this day, no commitment has been made by the county board nor has any resolution ever been passed committing whatever funds might arise from this host fee agreement to the jailhouse expansion. And I believe that the Supreme Court has specifically said that that is not an adjudicatory fact anyway, as long as the nine criteria are considered and followed and approved. Is fairness a principle of justice or is it a matter of equity? In this context, I believe it is a matter of equity. And the law pretty much establishes what the concept of fundamental fairness means. It means allowing individuals in the community, and within the statute itself, those individuals are defined as people who have, through the notice provisions of Section 39-2, people who have an interest because of the fact that they are contiguous to or lie close to the property in question to appear, participate, cross-examine witnesses, et cetera. And unless and until one can show that there is actual prejudice in some form, which does not exist here by any stretch of the imagination, according to this record, fundamental fairness has been achieved. You said that the ordinance allows for more participation in the Act. And the Act doesn't really talk about public participation. It discusses public comment. It discusses full participation by some municipalities or other local governmental bodies. I mean, is the Act really the – if you just followed the Act and didn't allow – I mean, it doesn't talk about public participation. I'm referring, Your Honor, to the notice provisions in the Act that are required to provide the public who are affected the ability to appear. And my point is certainly the notice provisions wouldn't be more expansive than the right to appear and testify or present evidence or cross-examine witnesses. And so, therefore, it's apparent, I believe, on the face of the statutes and those notice provisions that this ordinance, which basically expanded that notice and allowed anyone that fell outside of even some of the areas that were included in the notice provisions of Section 39 to appear and participate, and it indeed has been pointed out, the hearing officer then went the full mile and allowed anyone to appear for any purpose and to cross-examine and to submit documents, submit evidence, and indeed that's what occurred here over several days of hearing. Does the Court have any other questions? I believe I have pretty much exhausted my argument. If we determine that it was fundamentally unfair, what would happen? Well, first of all, if the proceeding was determined to be fundamentally unfair, what you must remember is this, that even with the county board members that might be excluded as a result of undue influence, if that's what the Court determined or whatever, the vote to approve was still 9 to 8, even taking into account the seven individuals that made comments that had been questioned by Mr. Mueller. And so I think that this, at most, it would be considered harmless error. So it wouldn't be non-void and it wouldn't go back for a new hearing? I don't believe it should, Your Honor. What is the purpose of this hearing? The purpose of? The public hearing. The public hearing? To allow the public to participate, those who are affected, and to present their positions, and then that is a record that is taken to the county board for their adjudicatory process. From the 39.2 criteria? Yes. Any other questions? No, thank you. Nothing further. Thank you. Mr. Moran? I got it right, didn't I? Excellent, thank you, Your Honor. I'm very logical in some respects, thank you. No question. May it please the Court, Donald Moran on behalf of Waste Management of Illinois Council. I agree with the very first statement that Mr. Mueller made, and that is that the Illinois Environmental Protection Act establishes the entire structure through which pollution control facility siting applications are to be reviewed at the local level prior to the consideration by the Illinois Environmental Protection Agency of a permit application for such a facility. And because the Act defines this process and this structure, it also defines the parameters and the rights of any persons to participate and to address the issues that are called for in such a review. I thought that the case law said that the local siting authorities are not bound by the Act. Even though the Act says that those are the exclusive procedures for siting, but the case law, I think it's the City of Elgin v. Cook County Waste Management v. Pollution Control Board, didn't they say that the local siting authorities are not bound by these provisions of the Act? Local siting authorities are authorized to adopt their own rules and procedures, which are not inconsistent with the Act, and that may in fact build upon certain of the rights and the provisions contained within the Act. But the Act provides the basic fundamental structure for this entire review and this process. And that becomes important because throughout much of the petitioner's argument, the assumption has been made that the full participatory rights of any person to a siting application filed in the State of Illinois is the state of the law. And in fact, the Act at no point states, much less suggests, that any person of any kind could come into a siting hearing and have full rights as a party. And how do we know that? Well, clearly the language isn't in the Act, but more importantly the Act defines those rights of members of the public with respect to this proceeding. It requires that a pre-filing notice of the intent to file the application be submitted, be served upon certain property owners who own properties within a certain distance of the landfill or the proposed facility. It requires and gives the opportunity and the right for any person to present and file a written comment. That written comment can be presented any time after the application is filed, any time through the hearing, and any time up to 30 days of the last day of the public hearing. It also provides specifically, as Justice pointed out, that certain members or representatives of municipalities located either contiguous to the proposed site or contiguous to the municipality who has been charged with being the decision maker has the right to participate in these siting hearings. Do you think the notice provision is the participation? We're talking about citizens, not municipalities. The people who get notice or are entitled to notice, are those the people? Because the Act doesn't really say that they're entitled to participate. It doesn't really say anything that you get notice. Correct, and indeed the language as written does not convey or establish the point that those persons entitled to pre-filing notice are entitled to full party status, full participation rights at the hearing. And so on its face, doesn't that have a chilling effect? I don't believe it has a chilling effect. In rendering the hearing unfair. I don't believe it does, Your Honor, because I believe what the legislature intended by this process, which was to finally vest in a local unit of government the right for the locality and the persons within that locality to be able to submit comment and review a proposal which will ultimately be submitted to the Illinois Environmental Protection Agency for a permit. Before we had these provisions of the Act, what would occur is an applicant would simply go to the agency, make the request, that process would be reviewed, and ultimately the agency would make a determination, frequently with minimal, with any input, from the locality. So the legislature was very clear in terms of what it wanted to do here. It created a process that was not the legislative process we're used to in most zoning decisions, although this is very similar to a zoning type review. It provided for a very unique process, one that incorporates these quasi-adjudicative elements which occurs once the filing happens and once the hearing can then be held. But then the legislature was very clear. The only right we're going to give to all persons, the person from Wisconsin, the person from California, the Sierra Club, whoever it is, is the right to present written comment. Now, beyond that, in addressing the DeKalb County rules and articles, one of the points I think we've missed is those articles provided any person the right to submit exhibits, to present written comment, and to cross-examine witnesses. In Article III, Section 7D of the Articles, it provides that any person who attends a hearing may submit questions to the hearing officer as if on cross-examination, and the hearing officer must submit those questions to the witness so as to accord with fundamental fairness. So, indeed, this ordinance and these rules of DeKalb County provided for this very right to cross-examine that the petitioner says was denied to some hypothetical person. Clearly not the case. So if we look at what the DeKalb County ordinance and rules did here, it did, in fact, provide for greater participatory rights for any persons than the act or than the petitioner's content. And it's a critical point because, as we've discussed with respect to the difference between the legislative process and the quasi-adjudicative process, that legislative process extends all the way up until the day of filing. There can be no question about that. The proceeding is only initiated, and the quasi-adjudicative rules that apply can only begin once the application is filed. They then will persist through a decision, whatever that may be, and the important point is what rights and obligations are imposed upon any persons as a result of DeKalb County's rules and procedures, and they are broader than what the act provides. And in this instance, given what's provided in those rules and given what the hearing officer did, clearly there was no person at any point who was at any point denied the full opportunity to meaningfully participate and to participate as a party at this hearing. There's absolutely no question about that. The record is absolutely clear in that regard. And the fact that this proceeding was prominently reported both in the newspaper and elsewhere throughout the county, if there were any person out there who somehow had read the rules, and if they read the rules, they would have read them inappropriately and inaccurately because, as I just pointed out, it gave these individuals the very right that the petitioners are complaining about. But assuming there were such people who had such an interest, it's hard to imagine a situation in which they wouldn't at some point become aware of the fact that there was a hearing proceeding and that they could participate if they so desired. One of the cases that we mentioned in our briefing, we talked about, with respect to this whole issue of quasi-adjudicative versus legislative process, was a case in which Mr. Mueller represented the applicant. And in that instance, there was a situation where the applicant attended a city council meeting prior to the time an application was ever filed and, in essence, presented a major part of their case. There was an individual who presented evidence on the signing application yet to be filed. The public, while they could have attended the meeting, nonetheless didn't attend because they had no idea this presentation was going to be made. And the presentation was completed, and the application then subsequently filed two days later, and the contention was made by the objecting parties that, hold on, you have a situation here where there was a presentation of information to the decision-maker before the signing application was filed, which clearly was information not available or not accessed by any people who ultimately wanted to participate and oppose the facility. Fundamental fairness was challenged in that case. The Pollution Control Board, in reviewing that scenario, that situation, made the very point that we've identified today, and that is, prior to the filing of the application, there is not any proceeding in which there can be inappropriate communication or information provided. And, indeed, the Board went on to say that the fact that there was then a hearing at which evidence was presented cured any problem that there may have been with evidence having been presented on the signing application before it was filed. What do you think the purpose of the proceedings are supposed to accomplish? The proceedings are intended to allow the local unit of government to review or request an evidence presented by an applicant to establish those nine statutory criteria, and also to allow interested persons to come in and submit written comment or other evidence, other exhibits, to present their case, to basically have the opportunity to review that application and present their case and to make an argument as to whether the evidence presented satisfied those nine statutory criteria, because those criteria are the linchpin around which the entire process functions. If the evidence that's presented establishes those criteria, the decision must be for approval. If it doesn't, simply a denial. And that's the purpose at which local residents had the opportunity to submit their comment. That's the critical aspect of these hearings, which clearly, based on the record here, was satisfied. Any comment about the tours? Yes. Every decision that has come down from appellate court or from the Pollution Control Board has held that a tour conducted prior to the filing of an application is appropriate. The case I just mentioned, the County of Kankakee case, which Mr. Mueller was involved, involved a tour that occurred prior to the filing of an application. There were many other instances in which those pre-filing tours were determined to be appropriate because they were filed during that period in which the legislative process was moving forward. As the Supreme Court has told us, there is no inherent bias in combining investigatory and adjudicatory functions of a local decision-maker. Clearly, in this case, this is what occurred. Moreover, with respect to those tours, the Southwest Energy case was a case that's frequently been cited for a tour that was improperly held. There was another situation in that case that hasn't been addressed or addressed fully, and that was the fact that after the application was filed, there was a meeting scheduled, a luncheon meeting, in which the applicant, the entity that would construct this incinerator for the applicant, were going to address and speak to an invited crowd with respect to this proposed incinerator. There were approximately 75 people, including five members of the city council and the mayor who attended. There was someone who was objecting to this proposal who was told, you can't come in, you were not invited. That was challenged as also being fundamentally unfair because it related to what amounted to an ex parte communication because it occurred after the filing of the application. The fourth district determined that no, in that instance, the luncheon was not inappropriate and not fundamentally unfair because even though it was filed two months after, or actually it was conducted two months after the filing of the application, no opposing party or no group had filed any appearance in that proceeding. So there was no one that could have been identified, no one who could have been notified. So both the Blues Control Board and the appellate court said that luncheon, which clearly involved ex parte communications, was not fundamentally unfair because there was no one to identify, no one to notify. Okay. Thank you very much. Mr. Mueller. Thank you. Do you remember the Kankakee case? I do. Is he telling it the way it is? Mostly. How would you describe that case? Well, the Blues Control Board, with regard to the mini-presentation to the city council held prior to the filing of an application, said that it did not violate fundamental fairness because number one, it was at a public meeting where anyone could be present. Number two, there was a transcript of everything that was said at that meeting by all sides and the comments themselves by the representatives of the applicant were relatively innocuous. And number three, the press was even invited to ask questions after the mini-presentation. So that's not at all like a tour. Now, I do disagree with Mr. Moran on his statement that every case that's ever looked at a private tour has sanctioned those tours. In Kankakee, the Blues Control Board said, we don't know enough about what happened on the tour to have an opinion. They rendered basically a one-line answer saying, there isn't any evidence about what that tour involved and who went. The only other tour, besides the ones in Havana and Beardstown, was the tour in the Tate case in which the court specifically noted that an objector representative was invited to accompany the decision-makers on the tour. Those are the only tours out there. Now, the trend has been to see from case to case how far we can push the limits of fairness. How far can we go before finally someone says, enough is enough, these things just aren't fair anymore. And I appreciated the question of whether fairness is an issue of equity or justice. I mean, I think that the question needs to be extended, though, how much are we going to let the window be opened before we finally say enough is enough. And frankly, when I walked out of here about a year ago after the oral argument in Fox Marine in which Justice Zinoff sat on that panel, I thought maybe that had been the case where enough was enough. I think what happened in this case is worse than what happened there because, in this case, the applicant is responsible for a large part of the problem and it's not just the inadvertent actions of decision-makers who didn't clearly understand their role. And the Pollution Control Board misunderstands what we have to prove because they keep saying that people who claim things are unfair and that there's been prejudgment and bias have to demonstrate by clear and convincing evidence that there is an unalterably closed mind by the decision-makers. And once decision-makers get up and say, nope, we based our decision on the evidence, you can't make that presentation. This court rejected that standard in E&E Hauling and adopted the disinterested observer test, which the Pollution Control Board refuses to recognize as being distinct from the unalterably opposed test. But the Pollution Control Board here believed the witnesses who testified, at least that's what it indicates. They just took them at their word. Well, but that's a credibility issue. We have to judge on the manifest way of the evidence. That's a finding of fact by the Pollution Control Board. We weren't there. We didn't see it. Well, I think that's a mixed question, fact and law, because... Whether the board believed their testimony? Not whether the board believed the testimony, but the board paid service and homage to that testimony. They never said, we find that testimony credible or truthful. They just said, these people testified. There's no evidence to the contrary. And that's why you have to look at some of the other factors here. The county board had adopted a report by a financial consultant identifying the host fee revenues as the funding source for the jail bonds. The jail was a critical issue in that county. And that adoption of that report was done before the application was filed. You've got county board members telling members of the public, it's a done deal. We have no choice. All of those things in concert have to be considered. It's not an isolated incident. When is the last straw going to get on the camel's back? Because we've got plenty of statements here that would lead a disinterested observer to conclude that the decision was tainted by prejudgment. You said something that piqued my curiosity. Someone said it was a done deal? Yes. When did they say that? That was said to actually one of the members of staff at the Megadon. I believe it was said by Julia Fauci. And it was said almost a year before the public hearing took place. And then similar comments were allegedly made by another board member, Mr. Onken, during the actual siting hearing. Although at the Pollution Control Board hearing, he repudiated those comments and basically said he must have been misunderstood or taken out of context. But the Pollution Control Board heard everything that you just said. They heard that evidence, right? Yes. They did. And I cannot argue with that. My position in this appeal and in others, and the other one I've argued before this court is the PCB is not living up to its responsibility to critically examine these issues and to see when they're going to put the brakes on rubber stamping local decision making. They haven't overturned a case in 12 years on any of these issues. With regard to the participation of different classes of individuals in these public hearings. Have there been cases where siting authorities have denied applications? And the Pollution Control Board has rubber stamped those denials as well. So it appears an argument can be made that the statute's working. Allowing the local authorities to hear their constituents and realize they're going to get voted out if they don't make the right decision. And hear the waste management companies like that and make the decisions on a local level. What you just said would leave me maybe a disinterested observer to believe that the statute's working. Well, I take issue with your Honor's reference to individuals being voted out. Because that should not be a concern on the part of the local decision maker when he or she puts on that adjudicatory hat. If that decision maker has that concern, all of a sudden the decision is sliding over into being a legislative one. And that's what we're trying to prevent from happening. It's interesting that after Clarence B. Lyle, the legislature actually changed the law to make the review of those kinds of zoning decisions on a legislative standard. Because the legislature didn't like what the Supreme Court did in that case. And in citing cases, we're still at an adjudicatory decision. Now, when Mr. Moran argues for limitations on participation, these are regional facilities, these landfills. They have far-reaching impact. Those impacts in terms of groundwater, traffic, various nuisance vectors, odors, and the like, are not limited to 250 or 400 feet. These are regional facilities that people are building now. And that's why, historically, participants in these proceedings have been come one, come all. That has always been the case. The rules, Article 3, Section 7D, appears to allow, as Mr. Moran, I believe, indicated, for people to submit questions to the hearing officer in lieu of cross-examination. Written questions so the hearing officer can kind of vet those questions. Written questions to a hearing officer, which may or may not be asked at the hearing officer's discretion, are a far cry from actually being allowed to cross-examine and follow a line of answers with further follow-up questions. The art of cross-examination is to take the answer to one question and follow it with an appropriate, more pointed second question. That can't happen. It's a step, but it's not equivalent. The last thing that I wanted to say is this distinction between pre-filing and post-filing contacts. This Court, apparently, by some of the questions that I've heard, acknowledges the fact that you need to look at those contacts, even if they are pre-filing. And it's the PCB that is advocating a rule that pre-filing contacts are off-limits and are not to be considered. We're the ones saying, look at them on a case-by-case basis. And that was what the law at the PCB was after the Kankakee decision that Mr. Moran referred to. But since that time, the PCB has backed away and has now said pre-filing contacts aren't going to be considered. That's also at odds with the case law in Land and Lakes. And the point is, all we asked for in this review by the PCB was, let's look at the impressions made in the private tour. And the PCB said it's not an ex parte contact. We're not going to consider it. So for all those reasons, if there are no further questions, I'm going to ask that the decision of the Board be reversed and that the matter be dismissed. Thank you. The case was taken under advisement. There are no further cases in the call. The Court is adjourned. Thank you.